ORAL ARGUMENT NOT YET SCHEDULED

No. 24-1298

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

WORLD SHIPPING COUNCIL,
*Petitioner,*

v.

FEDERAL MARITIME COMMISSION AND UNITED STATES OF AMERICA,
*Respondents.*

ON PETITION FOR REVIEW OF AN ORDER OF THE
FEDERAL MARITIME COMMISSION

**BRIEF FOR RESPONDENTS
FEDERAL MARITIME COMMISSION
AND UNITED STATES OF AMERICA**

ABIGAIL A. SLATER
*Assistant Attorney General*
ROBERT B. NICHOLSON
ROBERT J. WIGGERS
*Attorneys*
U.S. DEPARTMENT OF JUSTICE
950 PENNSYLVANIA AVENUE, N.W.
WASHINGTON, D.C. 20530-0001
PHONE: (202) 514-2460
robert.nicholson@usdoj.gov
robert.wiggers@usdoj.gov

PHILLIP "CHRIS" HUGHEY
*General Counsel*
HARRY J. SUMMERS
*Attorney-Advisor*
FEDERAL MARITIME
    COMMISSION
800 N. CAPITOL ST., N.W.
WASHINGTON, D.C. 20573
PHONE: (202) 523-5740
phughey@fmc.gov
hsummers@fmc.gov

May 13, 2025

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), respondents Federal Maritime Commission (Commission) and United States of America submit their Certificate as to Parties, Rulings, and Related Cases.

**(A)** **Parties and Amici**. The participants to the rulemaking proceeding before the Federal Maritime Commission, including the World Shipping Council, are listed in Respondent Federal Maritime Commission's Certified Index to the Record as to Final Rule (Oct. 31, 2024) (Doc. No. 2083048).

The parties to this proceeding are the World Shipping Council, as Petitioner, and the Federal Maritime Commission and the United States of America, as Respondents. There are no amici curiae.

**(B)** **Ruling Under Review**. The ruling under review is the Commission's order and final rule Definition of Unreasonable Refusal to Deal or Negotiate with Respect to Vessel Space Accommodations Provided by an Ocean Common Carrier, 89 Fed. Reg. 59648 (July 23, 2024) (JA82).

**(C)** **Related Cases**. Respondents know of no related cases.

i

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................1

COUNTERSTATEMENT OF JURISDICTION .......................................3

COUNTERSTATEMENT OF THE ISSUES...........................................3

STATUTES AND RULES ....................................................................4

COUNTERSTATEMENT OF THE CASE...............................................4

I.     The Applicable Legal Framework .................................................4

II.    Administrative Proceedings.........................................................5

       A.    Congress Enacts OSRA 2022 to Further Empower the FMC
             to Address Unfair Practices by Ocean Carriers, Including
             Refusals to Deal or Negotiate as to Vessel Space.................5

       B.    The Commission Implements OSRA 2022's Direction
             to Define Unreasonable Refusals to Deal or Negotiate
             by Ocean Carriers ........................................................8

III.   Proceedings Before This Court....................................................14

SUMMARY OF ARGUMENT ...............................................................15

ARGUMENT .....................................................................................16

I.     The Rule Permissibly Defines Unreasonable Refusals to Deal
       or Negotiate with Respect to Vessel Space Accommodations.......16

       A.    Standards of Review......................................................16

       B.    The Commission Had Ample Authority to Issue the Refusal-
             to-Deal Rule, and the Rule Easily Survives the Deferential
             Review Applicable to "Arbitrary and Capricious" Claims ......17

             1.   The Rule Was Well Within the Agency's Authority and
                  a Reasonable Exercise of its Policymaking Discretion ......17

2. The Commission Permissibly Included Two Price-Related Factors to Be Used in Evaluating Whether Conduct Is Unreasonable ...............................................................19

3. The Council Permissibly Required Carriers to Document Their Export Policies and to List Compliance with Such Policies as a Potential Factor in Determining Reasonableness ...............................................................24

    a.    The Commission Had Statutory Authority to Issue the Rule's Export Policy Provisions ....................24

    b.    The Commission Reasonably Explained the Rule's Export Policy Provisions .....................................28

4. The Commission's Rule Reasonably Provides for Consideration of "Business Decisions" ..........................................31

CONCLUSION .........................................................................38

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Batterton v. Francis*, 432 U.S. 416 (1977) .............................................................18

*Evergreen Shipping Agency (Am.) Corp. v. FMC*, 106 F.4th 1113
(D.C. Cir. 2024) ...........................................................................36, 37

*FCC v. Prometheus Radio Project*, 592 U.S. 414 (2021).......................................16

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) ......................17, 18, 27, 33

*Maher Terminals, LLC v. Port Auth. of N.Y. and N.J.*, FMC No.
12-02, 2015 WL 435475 (ALJ 2015) ...............................................34

*Nat'l Ass'n of Mfgrs. v. SEC*, 800 F.3d 518 (D.C. Cir. 2015) ................................33

*NextEra Energy Res., LLC v. FERC*, 118 F.4th 361
(D.C. Cir. 2024) ...........................................................16, 19, 24, 30

*Sinclair Wyoming Refining Co. LLC v. EPA*, 114 F.4th 693
(D.C. Cir. 2024) ...............................................................................35

*Snyder v. Massachusetts*, 291 U.S. 97 (1934)........................................................33

*State of Cal. v. United States*, 320 U.S. 577 (1944) ...............................................20

**Statutes and Regulations**

5 U.S.C. § 706(2)(A)..............................................................................................16

5 U.S.C. § 706(2)(C)..............................................................................................16

28 U.S.C. § 2342(3)(B)...........................................................................................3

29 U.S.C. § 213(a)(15)...........................................................................................18

iv

42 U.S.C. § 5846(a)(2) ..................................................................... 18

46 U.S.C. § 40101(2) ....................................................................... 29

46 U.S.C. § 40101(4) ....................................................................... 29

46 U.S.C. § 40102(9) ....................................................................... 22

46 U.S.C. § 40104 ..................................................................... 13, 15

46 U.S.C. § 40104(a) ........................................................ 2, 25, 26, 27

46 U.S.C. § 40104(a)(1) ................................................................... 22

46 U.S.C. § 40104(a)(3) ................................................................... 28

46 U.S.C. § 40501(a)(1) ................................................................... 22

46 U.S.C. § 40501(d) ....................................................................... 22

46 U.S.C. § 40501(e) ....................................................................... 22

46 U.S.C. §§ 40701–02 .................................................................... 22

46 U.S.C. § 40704 ........................................................................... 22

46 U.S.C. § 41104(a)(2)(A) .............................................................. 22

46 U.S.C. § 41104(a)(3) ...................................................... 4, 8, 9, 18, 32

46 U.S.C. § 41104(a)(4) ................................................................... 22

46 U.S.C. § 41104(a)(5) ................................................................... 22

46 U.S.C. § 41104(a)(10) .......................... 1, 4, 6, 8, 9, 12, 17, 23, 28, 32

46 U.S.C. § 41110 ....................................................................... 7, 13

46 U.S.C. §§ 41301–41310 ................................................................ 4

46 U.S.C. § 46105(a) ................................................................3

Ocean Shipping Reform Act of 2022, Public Law 117–146,
    136 Stat. 1272 (June 16, 2022) ...........................................5

        Sec. 6 ...........................................................................7

        Sec. 7(d) ................................................ 3, 6, 8, 17-18, 33

        Sec. 9 ...........................................................................7

Shipping Act of 1984, 46 U.S.C. §§ 40101–41310 ...................4


46 C.F.R. § 542.1 ..............................................................20, 34

46 C.F.R. § 542.1(b) .....................................................10, 12, 24

46 C.F.R. § 542.1(b)-(h) ........................................................19

46 C.F.R. § 542.1(c)-(h) ....................................................10, 31

46 C.F.R. § 542.1(d)(1) .....................................................19, 24

46 C.F.R. § 542.1(d)(4) .....................................................31, 32

46 C.F.R. § 542.1(g)(1) .....................................................19, 24

46 C.F.R. § 542.1(g)(4) .....................................................31, 32

46 C.F.R. § 542.1(h)(1) .................................................12, 19, 23

46 C.F.R. § 542.1(j) ............................... 13, 14, 24, 28, 29, 30

46 C.F.R. § 542.1(j)(i) ...........................................................19

46 C.F.R. § 542.1(j)(3).........................................................14

**Miscellaneous**

87 Fed. Reg. 57674 (Sept. 21, 2022) ........................................................... 31, 35-36

88 Fed. Reg. 38789 (June 14, 2023) ....................................................19, 23, 31, 36

89 Fed. Reg. 59648 (July 23, 2024)...... 1, 3, 5–14, 18–21, 23, 24, 28, 29, 31–35, 37

90 Fed. Reg. 30 (Jan. 2, 2025) ..........................................................................14, 30

167 Cong. Rec. H7472-79 (daily ed. Dec. 8, 2021) ....................................................6

168 Cong. Rec. H5460–67 (daily ed. June 13, 2022)................................5, 6, 21, 29

168 Cong. Rec. S1843 (daily ed. Mar. 30, 2022) ................................. 5, 6-7, 29, 35

168 Cong. Rec. S1891 (daily ed. Mar. 31, 2022) ......................................................6

Hearing Before Subcommittee on Merchant Marine of the Committee
    on Commerce, Science, and Transportation on S. 1593 and S. 125,
    U.S. Senate, 97th Cong., 1st Sess. (Sept. 21, 1981) .........................................27

S. Hearing 117–437 (Mar. 3, 2022) .........................................................5, 7, 29, 35

# GLOSSARY

| | |
|---|---|
| APA | Administrative Procedure Act |
| Council | World Shipping Council |
| FMC | Federal Maritime Commission |
| JA | Joint Appendix |
| OSRA 2022 | Ocean Shipping Reform Act of 2022 |
| Rule | Definition of Unreasonable Refusal to Deal or Negotiate with Respect to Vessel Space Accommodations Provided by an Ocean Common Carrier, 89 Fed. Reg. 59648 (July 23, 2024) |

# INTRODUCTION

The World Shipping Council (Council) challenges parts of a Federal Maritime Commission (Commission or FMC) Rule defining unreasonable refusals by ocean carriers to deal or negotiate as to space on their container ships, a rule issued at Congressional direction in response to unfair practices by ocean carriers against shippers during the Covid-19 pandemic. The Council, a trade association for the world's largest ocean carriers, objects to several aspects of this Rule. But the FMC had ample authority to issue the Rule, and it was reasonably explained under the Administrative Procedure Act's (APA) deferential standard of review.

In the Ocean Shipping Reform Act of 2022 (OSRA 2022), Congress sought to strengthen the Commission's ability to combat unfair practices by ocean carriers. OSRA 2022 required the Commission to conduct a rulemaking "defining unreasonable refusal to deal or negotiate with respect to vessel space" under 46 U.S.C. § 41104(a)(10). Legislative history shows that Congress sought to enhance the protection that key statutory provision extends to U.S. shippers, particularly exporters. Following Congress's direction, the Commission conducted an extensive notice-and-comment rulemaking proceeding. 89 Fed. Reg. 59648 (JA82). The resulting Rule contains definitions of key terms; the basic elements needed to establish a violation of the statute; and non-binding considerations and examples to be used in evaluating unreasonable conduct.

1

Despite the Council's claims, the Commission had the authority to include price-related factors among those that *may* be considered in its analysis of whether a refusal to deal was unreasonable, including whether a carrier quoted rates so far above market rates they did not reflect good faith negotiation. Considering such rate-related factors is well within the agency's jurisdiction, as it must evaluate or otherwise make determinations related to rates in a number of other statutory contexts. In addition, the Commission adequately explained the potential relevance of pricing to whether a refusal to deal was reasonable.

The Commission also had the authority to require carriers to submit annual export policies, and to list compliance with such policies as a potential consideration in evaluating whether conduct was unreasonable. The Council objects that the policies are to include information about "pricing strategies, services offered, strategies for equipment provision, and descriptions of markets served," but 46 U.S.C. § 40104(a) broadly authorizes the agency to require the reporting of such information. In addition, the Commission explained in detail how the export policy filing requirement would help to protect U.S. exports.

Finally, the Commission's Rule provides for adequate consideration of "business decisions," even though they are not expressly listed among those the agency may consider in determining whether conduct was unreasonable. The Rule states that the agency may consider any other relevant factors, and the preamble

2

confirmed that business factors are among them. The Council fails to show that the APA requires the agency to list any particular factor in such a rule, where Congress imposed no specific content requirements. And the Commission adequately explained its policy choice here under the deferential standard of review.

The Council's petition should be denied.

## COUNTERSTATEMENT OF JURISDICTION

The Commission had the authority to issue the Rule, 89 Fed. Reg. 59648 (July 23, 2024) (JA82), under 46 U.S.C. § 46105(a) and OSRA 2022, Pub. L. 117-146, Section 7(d), 136 Stat. 1272, 1276. Petitioner timely sought judicial review under 28 U.S.C. § 2342(3)(B).

## COUNTERSTATEMENT OF THE ISSUES

The issues presented for review are: (1) whether the Commission may include rate-related factors in assessing whether an ocean carrier's refusal to deal or negotiate as to vessel space accommodations was unreasonable; (2) whether the Commission may require carriers to file documented export policies and may include compliance with such policies as a potential factor in determining whether conduct was unreasonable; and (3) whether the Rule is arbitrary and capricious because it does not give sufficient weight to "business decisions."

## STATUTES AND RULES

The applicable statutes and regulations are contained in the Addendum to the Opening Brief for Petitioner (Mar. 3, 2025) (Doc. No. 2103714) (Br.). The key statutory provisions at issue are:

46 U.S.C. § 41104. Common carriers

(a) In general. —A common carrier, either alone or in conjunction with another person, directly or indirectly, shall not— …

   (3)   Unreasonably refuse cargo space accommodations when available, or resort to other unfair or unjustly discriminatory methods; [or]

   (10)   Unreasonably refuse to deal or negotiate, including with respect to vessel space accommodations provided by an ocean common carrier; …

## COUNTERSTATEMENT OF THE CASE

## I.    The Applicable Legal Framework

The FMC is an agency of the United States government with jurisdiction over the administration, interpretation, and enforcement of the Shipping Act of 1984. *See generally* 46 U.S.C. §§ 40101–41310. Among other things, the Shipping Act prohibits ocean common carriers from unreasonably refusing to deal or negotiate with regard to vessel space accommodations. *See* 46 U.S.C. § 41104(a)(3), (a)(10). The Commission adjudicates administrative complaints alleging violations of the Act, *see* 46 U.S.C. §§ 41301–41310.

## II.    Administrative Proceedings

### A.    Congress Enacts OSRA 2022 to Further Empower the FMC to Address Unfair Practices by Ocean Carriers, Including Refusals to Deal or Negotiate as to Vessel Space

Congress enacted the Ocean Shipping Reform Act of 2022 to strengthen many of the Shipping Act's key provisions, in response to the severe supply chain constraints experienced during the Covid-19 pandemic. Pub. L. 117-146, 136 Stat. 1272 (June 16, 2022) (OSRA 2022). *See* 89 Fed. Reg. 59648 (JA82). Members of Congress expressed deep concern about unfair practices and abuses by highly profitable ocean carriers that became apparent at that time. *See* 168 Cong. Rec. S1843 (daily ed. Mar. 30, 2022) (statement of Sen. Thune, Member, Committee on Commerce, Science, and Transportation (Commerce Committee)) (OSRA 2022 would give the FMC "increased authority to respond to unfair ocean carrier practices"); 168 Cong. Rec. H5464–67 (daily ed. June 13, 2022); *id*. at H5465 (statement of Rep. Garamendi, Member, Committee on Transportation and Infrastructure (Transportation Committee)) (OSRA 2022 "will make a very real difference for American businesses and consumers by lowering the exorbitant ocean shipping costs and prohibiting unfair business practices by foreign-flagged ocean carriers."); S. Hearing 117–437, Ocean Shipping Reform Act, Commerce Committee (Mar. 3, 2022) at 30 (statement of Sen. Warnock, Member, Commerce Committee) ("It is really hard to wrap your mind around how much money large

ocean carriers are making, the shipping industry has made during this global crisis.").[1]

Section 7(d) of OSRA 2022 directed the Commission, "in consultation with" the U.S. Coast Guard, to conduct a rulemaking "defining unreasonable refusal to deal or negotiate with respect to vessel space" under 46 U.S.C. § 41104(a)(10). Pub. L. 117–146, 136 Stat. at 1276; 89 Fed. Reg. 59648 (JA82). Member comments showed that Congress sought to strengthen the protection this key part of the Shipping Act provides to U.S. shippers, particularly exporters. *See* 168 Cong. Rec. H5464 (statement of Rep. DeFazio, Chairman, Transportation Committee) (OSRA 2022 "ensures that ocean carriers cannot refuse U.S. export cargo bookings for arbitrary reasons"); H5466 (statement of Rep. Garamendi) (OSRA 2022 will require "that ocean carriers make a good-faith effort to negotiate vessel space and accommodate the cargo bookings for U.S. exports"); 168 Cong.

---

[1]    The legislative history of OSRA 2022 is brief. The Ocean Shipping Reform Act of 2021, H.R. 4996, 117 Cong., sponsored by Rep. Garamendi, went to the House floor without a committee report and was passed by a 364-60 vote on December 8, 2021. 167 Cong. Rec. H7472–79; Office of the Clerk, U.S. House of Representatives - Vote Details (remote vote). The Senate Committee on Commerce, Science, and Transportation then produced its own bill, cosponsored by Sens. Klobuchar and Thune, which likewise went to the floor without a committee report and was passed unanimously. Ocean Shipping Reform Act of 2022, S. 3580, 117 Cong.; 168 Cong. Rec. S1891 (Mar. 31, 2022). The House passed the Senate bill without amendment by a 369-42 vote. 168 Cong. Rec. H5460–67 (June 13, 2022). Thus, other than the Senate Committee hearing discussed in the text, the floor statements of the sponsors provide the background for the statute.

Rec. S1843 (statement of Sen. Thune) (increased FMC authority to address unfair carrier practices includes those that "involve[] a refusal to carry certain cargo, like agricultural commodities..."); S. Hearing 117–437 at 8 (statement of Sen. Klobuchar, Member, Commerce Committee) (OSRA 2022 directs the FMC "to issue a rule prohibiting international ocean carriers from unreasonably declining shipping opportunities for U.S. exports, making it harder for them to unfairly leave our products behind in favor of importing products from, say, China.").

OSRA 2022 also contained provisions to expand the Commission's information-gathering and public disclosure of certain ocean carrier activities. *See*, *e.g.*, Pub. L. 117–146, 136 Stat. at 1274, Section 6 (requiring public disclosure of certain findings of violations by and penalties imposed on ocean carriers). Section 9 of the statute added the new 46 U.S.C. § 41110 (Data collection), which requires the FMC to publish quarterly reports describing "the total import and export tonnage and the total loaded and empty 20-foot equivalent units per vessel [making port in the United States] operated by each ocean common carrier," and requires carriers to provide all information needed for such reports "as determined by the Commission." Pub. L. 117–146, 136 Stat. at 1277; *see* 89 Fed. Reg. at 59649 n.10 (JA83).

**B.** **The Commission Implements OSRA 2022's Direction to Define Unreasonable Refusals to Deal or Negotiate by Ocean Carriers**

Following the passage of OSRA 2022, the Commission issued a Notice of Proposed Rulemaking (NPRM) in September 2022 to implement Congress's direction in Section 7(d) that it define "unreasonable refusal to deal or negotiate" with respect to vessel space under 46 U.S.C. § 41104(a)(10). Pub. L. 117–146, 136 Stat. at 1276; 89 Fed. Reg. 59648 (JA82). In response to the NPRM, the Commission received comments from a variety of industry participants. 89 Fed. Reg. 59648 (JA82); FMC's Certified Index to the Record as to Final Rule (Oct. 31, 2024) (Doc. No. 2083048) (Certified Index) at 2-5. Among the commenters was the Council, which describes itself as the "primary non-profit global trade association representing the interests of ocean carriers," and whose members are 22 large carriers that together operate about 90 percent of the world's liner vessel services. Br. at 22; *see* Certified Index at 4; World Shipping Council, World Shipping Council (visited Mar. 21, 2025).

In June 2023, after reviewing the comments to the NPRM, the Commission issued a revised and expanded Supplemental Notice of Proposed Rulemaking (SNPRM). *See* 89 Fed. Reg. 59648 (JA82). The SNPRM further addressed OSRA 2022's amendment to 46 U.S.C. § 41104(a)(10), but it also addressed the statute's amendment to 46 U.S.C. § 41104(a)(3), which bars unreasonable refusals of cargo space accommodation when available. *Id*. The Commission explained that it

8

viewed those two provisions as closely related, as they both concern carriers'
refusals of shippers' attempts to secure cargo space, but distinct in that under the
Shipping Act as amended, section 41104(a)(10) applies at the deal negotiation
stage, whereas section 41104(a)(3) applies after a deal has been reached. *Id*. The
Commission also pointed out the benefits of addressing those provisions together.
*Id*. at 59648–49 (JA82–83). In response to the SNPRM, the agency received more
comments from members of the shipping community, including one from the
Council. 89 Fed. Reg. at 59650 (JA84); Certified Index at 5-7.

After considering all comments received and consulting with the Coast
Guard, the Commission issued the Rule on July 23, 2024. Definition of
Unreasonable Refusal to Deal or Negotiate with Respect to Vessel Space
Accommodations Provided by an Ocean Common Carrier, 89 Fed. Reg. 59648,
59649 (July 23, 2024) (Rule) (JA82, JA83). In the Rule's preamble, the
Commission emphasized OSRA 2022's focus on assisting U.S. exporters with the
challenges they have faced in obtaining space for their products in recent years,
and in particular on protecting exporters from unreasonable refusals by ocean
carriers to provide that space. 89 Fed. Reg. at 59648–50 (JA82–84). The
Commission explained that the Rule addressed both unreasonable refusals of cargo
space accommodations when available under section 41104(a)(3) and unreasonable
refusals to deal or negotiate with respect to vessel space accommodations under

9

section 41104(a)(10). *Id*. In particular, as to each of those two provisions, the Rule described the basic elements necessary for claimants to establish a successful claim of a violation, as well as some non-binding considerations in evaluating the critical issue of whether the conduct at issue was unreasonable and some non-binding examples of unreasonable conduct. *See* 46 C.F.R. § 542.1(c)–(h); 89 Fed. Reg. at 59668–70 (JA102–04). The Rule also had seven definitions of key terms, including a general definition of "unreasonable" as "ocean common carrier conduct that unduly restricts the ability of shippers to meaningfully access ocean carriage services from that ocean common carrier." 46 C.F.R. § 542.1(b). The Commission explained that the Rule set up a framework for the agency's evaluation of alleged violations, although each matter was factually driven and would be decided on a case-by-case basis. 89 Fed. Reg. at 59655, 59668–70 (JA89, JA102–04).

The great majority of the preamble to the Rule consisted of an extensive discussion of comments received and the Commission's responses. *See* 89 Fed. Reg. at 59650–59668 (JA84–102). Among many other issues addressed, the Commission noted that some commenters, including the Council, had argued that the proposed definition of "unreasonable" conduct was vague and subjective, and therefore arbitrary and capricious in violation of the APA. *Id*. at 59654–55 (JA88–89). In response, the Commission explained that the reasonableness determination was inherently a case-by-case one, but that the Rule did provide a general

definition, as well as notice and the opportunity for the regulated community to comment about how the agency would interpret the statute through the extensive rulemaking process, reducing any vagueness concerns. *Id*. at 59655 (JA89). The Commission also considered but rejected the Council's claim that the "reasonableness" analysis should be one of "commercial reasonableness," explaining that "profit and business factors" could already be considered alongside other factors, as the Rule expressly allowed the agency to consider any relevant factor in the analysis. *Id*.

The Council and some of its carrier members also argued that "business decisions" should be explicitly included in the regulatory text as a factor to be considered in the reasonableness analysis, as that factor had traditionally been part of the analysis. 89 Fed. Reg. at 59656–57 (JA90–91). The Commission declined to make that change to its rule text, but it noted again that the Rule explicitly allows it to consider *any* relevant factor, and it emphasized that "[t]his includes non-transportation factors, such as business decisions (which includes profit considerations)." *Id*. at 59657 (JA91). Thus, business factors were among the other relevant factors that the Commission was permitted but not required to consider, in examining the totality of the circumstances. *Id*. On the other side of the regulatory spectrum, the Commission similarly declined some requests from shippers to include in the regulatory text explicit mentions of certain factors that they favored.

11

*See*, *e.g.*, *id*. at 59658 (JA92) (declining requests by Retail Industry Leaders Association and International Dairy Foods Association to include cargo perishability as a listed consideration).

The Commission also addressed the objection by the Council and some of its carrier members that the example of unreasonable conduct under section 41104(a)(10) of quoting rates "so far above current market rates they cannot be considered a good faith offer or an attempt at engaging in good faith negotiations" was beyond the agency's authority with regard to rates, as well as vague and unworkable. 46 C.F.R. § 542.1(h)(1); *see* 89 Fed. Reg. at 59662 (JA96). In response, the Commission noted that this was simply a non-binding example, and that in any event the agency was not regulating or setting specific rates, but instead providing a potential way of analyzing negotiations as part of the reasonableness analysis under section 41104(a)(10), with market rates specifically included as part of that analysis. *Id*. The Commission noted that vagueness concerns were misplaced for the same reasons as in the earlier discussion of reasonableness. *Id*.

Finally, the Commission addressed objections by the Council and others that the agency lacked authority to require carriers to submit documented export policies. The Commission defined "documented export policy" as "a written report produced by an ocean common carrier that details the ocean common carrier's practices and procedures for U.S. outbound services." 46 C.F.R. § 542.1(b). The

policies are required to include "pricing strategies, services offered, strategies for equipment provision, and descriptions of markets served." 46 C.F.R. § 542.1(j); *see* 89 Fed. Reg. at 59663–64 (JA97–98). In response to the concerns expressed, the Commission explained that it clearly had authority under 46 U.S.C. § 40104, which broadly authorizes the agency to require common carriers to file periodic reports, "rate[s]," and memoranda of facts and transactions "related to the business of the common carrier." *Id*. at 59663 (JA97); *see id*. at 59649 n.10 (JA83) (discussing the new requirement in 46 U.S.C. § 41110 that carriers provide information enabling the Commission to publish quarterly statistics). The Commission rejected the argument that section 40104 limits the agency to collecting retrospective information, noting that the statute simply contains no such restriction. *Id*. In addition, the Council argued that the requirement violated the Paperwork Reduction Act, but the Commission explained that it had adequately justified collecting the information, which will help it monitor industry activities for reasonable conduct regarding exports, including whether carriers follow their own policies, without involving the agency in the day-to-day activities of the carriers. *Id*. at 59663–64 (JA97–98); 59670–71 (JA104–05).

Most of the Rule went into effect two months after its publication, on September 23, 2024. 89 Fed. Reg. 59648 (JA82). However, the requirement that carriers file export policies was subject to review by the Office of Management and

13

Budget (OMB), as it involved the collection of information. *Id*. at 59672 (JA106)

(discussing 46 C.F.R. § 542.1(j)); *see* OMB, Office of Information and Regulatory

Affairs, Information Collection Request Conclusion (Sept. 27, 2024), available at

https://www.reginfo.gov/public/do/PRAViewICR?ref_nbr=202407-3072-001.

After OMB approved, the Commission issued a rule establishing the effective date

of the requirement and providing instructions for filing. *See* Definition of

Unreasonable Refusal to Deal or Negotiate with Respect to Vessel Space

Accommodations Provided by an Ocean Common Carrier, 90 Fed. Reg. 30 (Jan. 2,

2025) (JA111). Among the listed filing instructions was the requirement that initial

export policies be filed by March 1, 2025, with subsequent annual policies to be

filed by that date each calendar year. *Id*. So far, the Commission has received many

filings under this requirement from Council members, and although the specific

filings are non-public under 46 C.F.R. § 542.1(j)(3), those filings average about 5.4

pages in length, excluding exhibits.

## III.   Proceedings Before This Court

The Council filed its petition on September 13, 2024. *See* Petition (Doc. No.

2074759). The petition challenges the Commission's Rule on the grounds that it

exceeds the agency's statutory authority and is arbitrary, capricious, an abuse of

discretion, and otherwise contrary to law. *Id*. at 1–2. The Commission moved to

dismiss for lack of standing, and the Court deferred consideration of that motion to the merits stage. *See* Order (Jan. 15, 2025) (Doc. No. 2094312).[2]

## SUMMARY OF ARGUMENT

The Council's petition should be denied because the Commission's refusal-to-deal regulation is consistent with the APA. The Commission had the authority to include two rate-related elements, in particular whether a quoted price was too far above market rates to reflect good-faith negotiation, among those to be considered in its analysis of whether a refusal to deal was unreasonable. Contrary to the Council's claims, including those non-binding examples differs greatly from setting rates. Indeed, the Shipping Act itself contains many provisions that require the agency to make determinations related to shipping rates. Although the relevance of rates to refusals to deal determinations seems obvious, the Commission clearly explained its policy decision in this regard.

The Commission also had the authority to require carriers to submit export policies, and to list compliance with such policies as a potential consideration in evaluating whether conduct was unreasonable. Title 46 U.S.C. § 40104 authorizes the agency to require a carrier to submit a "periodic report" like the one at issue here, and contrary to the Council's claims, that term can encompass prospective

---

[2]    The Commission is no longer pursuing its argument that the Council lacks standing in this case.

information. In addition, the Commission fully explained in the rulemaking how the requirement would serve Congress's interest in protecting U.S. exports.

Finally, it was within agency discretion for the Rule to omit "business decisions" from the list of elements it expressly says the agency may consider in determining whether a refusal to deal or negotiate was unreasonable. The Commission confirmed that such decisions remain among those the agency may consider, and the Council's claims of a drastic change in approach are wrong. The Council argues that business decisions are so important that failing to list them is arbitrary and capricious, but the FMC's approach satisfies deferential APA review.

## ARGUMENT

I. **The Rule Permissibly Defines Unreasonable Refusals to Deal or Negotiate with Respect to Vessel Space Accommodations**

A. **Standards of Review**

The Council seeks review under two APA provisions, asserting that the Commission's action here was arbitrary and capricious, 5 U.S.C. § 706(2)(A), and that it was in excess of statutory authority, *id*. § 706(2)(C). *See* Br. at 27–29.

Under the arbitrary and capricious standard, courts will "uphold decisions that are reasonable and reasonably explained," *NextEra Energy Res., LLC v. FERC*, 118 F.4th 361, 368 (D.C. Cir. 2024) (cleaned up), and they will "not substitute [their] own policy judgment for that of the agency," *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).

16

In construing an agency's statutory authority, courts of course "exercise their independent judgment." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13 (2024). In doing so, courts may "seek aid from the interpretations of those responsible for implementing particular statutes," which "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance consistent with the APA." *Id*. at 394 (cleaned up). And in construing statutory authorizations, courts can properly recognize that Congress has authorized an agency "to exercise a degree of discretion," to define a particular statutory term, to "fill up the details of a statutory scheme, or to regulate subject to the limits imposed by a term or phrase that leaves agencies with flexibility, such as 'appropriate' or 'reasonable.'" *Id*. at 394-95 (cleaned up).

### B. The Commission Had Ample Authority to Issue the Refusal-to-Deal Rule, and the Rule Easily Survives the Deferential Review Applicable to "Arbitrary and Capricious" Claims

#### 1. The Rule Was Well Within the Agency's Authority and a Reasonable Exercise of its Policymaking Discretion

As part of Congress's efforts to protect U.S. shippers from unfair practices by ocean carriers, Section 7(d) of OSRA 2022 directed the Commission to "initiate a rulemaking defining unreasonable refusal to deal or negotiate with respect to vessel space accommodations" under 46 U.S.C. § 41104(a)(10). Pub. L. 117–146,

136 Stat. at 1276; 89 Fed. Reg. 59648 (JA82).[3] Congress thus "expressly delegate[d] to [the] agency the authority to give meaning to a particular statutory term." *Loper Bright*, 603 U.S. at 394. Given that express definitional delegation, the court's role "under the APA" is to "fi[x] the boundaries of [the] delegated authority" and to "ensur[e] the agency has engaged in reasoned decisionmaking within those boundaries." *Id.* at 395 (cleaned up).

Here, the Commission acted within its statutory authorization in complying with Congress's directive and defining the statutory term. The conclusion comports with the cases and examples relied upon in *Loper Bright*, where the Court recognized that such explicit, limited delegations of definitional authority to agencies are commonplace. *See Loper Bright*, 603 U.S. at 394-95 & n.5; *accord Batterton v. Francis*, 432 U.S. 416, 419, 425 (1977) (explaining that when Congress directed the Secretary of Labor to establish standards defining unemployment, "Congress entrust[ed] to the Secretary, rather than to the courts, the primary responsibility for interpreting the statutory term"); 29 U.S.C. § 213(a)(15) (granting the Secretary of Labor express authority to define statutory terms); 42 U.S.C. § 5846(a)(2) (same for Nuclear Regulatory Commission). And

---

[3]     The Rule also defines unreasonable refusals of cargo space accommodations under 46 U.S.C. § 41104(a)(3), as the Commission explained, *see* 89 Fed. Reg. at 59648–49 (JA82–83), but none of the Council's claims here relates to elements of the Rule that apply only to that subsection.

within that express grant of authority to define terms, the Commission provided a reasoned explanation for its chosen definition. *See NextEra Energy*, 118 F.4th at 368.

### 2. The Commission Permissibly Included Two Price-Related Factors to Be Used in Evaluating Whether Conduct Is "Unreasonable"

The Rule lists many potential factors and examples to be used to evaluate future claims that an alleged refusal to deal was unreasonable. *See* 46 C.F.R. § 542.1(b)–(h). Two elements involve the limited, non-exclusive consideration of pricing. Specifically, the Rule: (1) includes as one non-binding example of conduct that may be considered unreasonable that a carrier quoted "rates that are so far above current market rates they cannot be considered a good faith offer or an attempt at engaging in good faith negotiations"; and (2) directs that "pricing strategies" be included among the categories of subjects in the carriers' annual export policies, compliance with which may be considered in the Rule's analysis of claims. 46 C.F.R. § 542.1(h)(1), (j)(1); *see id*. at § 542.1(d)(1), (g)(1). The Commission explained that consideration of rates in this context could be an important element in analyzing whether conduct was unreasonable, since pricing is a key part of contract negotiation. *See* 88 Fed. Reg. 38789, 38804 (June 14, 2023) (JA36, JA51); 89 Fed. Reg. 59662 (JA96). Those decisions were permissible.

19

The Council claims (Br. at 29–32) that, since the Commission no longer has the authority to set shipping rates in most situations, it also lacks authority to incorporate the two pricing-related elements in its Rule. In doing so the Council ignores both settled law and common sense. In *State of California v. United States*, 320 U.S. 577, 583–84 (1944), the Supreme Court squarely rejected the argument that the withholding of ratemaking power precludes the Commission from providing a remedy for unreasonable practices simply because the practices involve rates. Indeed, under the broad theory advanced by the Council — "[t]he simple act of claiming that a rate is unreasonably high or low is tantamount to setting an upper or lower rate limit, thus regulating the rate" (Br. at 30) — all a carrier would need to do if it did not want to deal for any reason is to quote an absurdly high rate, and the agency would be helpless to stop it. Congress did not pass such a self-defeating law. The Rule makes clear that the agency is doing something very different from setting rates. As the Commission explained, carriers retain the right to charge what they wish. *See* 46 C.F.R. § 542.1; 89 Fed. Reg. 59662 (JA96). But they cannot manipulate rate quotations as a means to unreasonably deny cargo accommodations.

In addition, these price-related elements are factors that the agency *may* consider as *part* of its case-by-case analysis. As the Commission explained, the rate-quoting part of the Rule "simply provid[es] a comparison point between rates

20

a carrier offers in negotiation, and rates that the rest of the market is charging for that space[, thus] allowing the market to set the rates and [] then examining whether the rates that any carrier puts forth in negotiations [are] so far above those market rates as to be unreasonable." 89 Fed. Reg. 59662 (JA96). Because pricing is a critical element of most contract negotiations, such a determination could be a significant factor in the analysis that Congress envisioned the Commission making. *See* 168 Cong. Rec. H5466 (statement of Rep. Garamendi) (OSRA 2022 will require "that ocean carriers make a good-faith effort to negotiate vessel space and accommodate the cargo bookings for U.S. exports"). But it is untenable for the Council to claim (Br. at 30) that there is no real difference between (1) setting shipping rates and (2) occasionally evaluating whether one particular rate quoted by a carrier in a specific context was unreasonably high, as just one potentially relevant factor, and solely as part of an adjudication of whether one alleged refusal to deal was unreasonable. And the Rule's inclusion of whether a carrier complied with its own stated "pricing strategies" — not even necessarily a specific price — as another potential factor in that analysis is even more remote from setting shipping rates.

Moreover, the Commission's inclusion of rate-related elements as part of its analysis of bargaining conduct is hardly unique or remarkable, because the Shipping Act itself contains many provisions that require the agency to evaluate or

21

otherwise make determinations related to shipping rates. Title 46 U.S.C. §
41104(a)(4) and (a)(5) in particular require the Commission to directly evaluate
whether rates charged reflect an "unfair or unjustly discriminatory practice," an
endeavor that, in its assessment of relative rate levels, is comparable to those
envisioned by the provisions the Council challenges here. *See also* 46 U.S.C. §
41104(a)(2)(A) (carriers must generally provide service that is "in accordance with
the rates, charges," and other elements contained in their published tariffs and
service contracts); 46 U.S.C. § 40104(a)(1) (the Commission may require a carrier
to file a "rate" or "charge" with the agency); 46 U.S.C. § 40501(a)(1), (d), (e)
(requiring that carriers' published tariffs show rates and regulating when rate
changes are effective).

And the Commission *can* directly regulate rates charged by carriers that are
designated "controlled carriers" under 46 U.S.C. § 40102(9) because they are
controlled by a foreign government. Those rates cannot be "below a just and
reasonable level," in order to ensure that such carriers do not use their state-
subsidized position in the marketplace to unduly undercut competitors. *See* 46
U.S.C. §§ 40701–02, 40704. The two members of the Council that are controlled
by the government of the People's Republic of China are subject to this FMC rate
regulation. *See* FMC, Controlled Carrier List, available at

22

https://www.fmc.gov/databases-and-publications/controlled-carrier-list/. Here

again, the statute requires the agency to engage in an assessment of rates.

The Council also claims (Br. at 30–32) that the Commission failed to explain

why it would need rate-related information and how it would be used. But the

Commission provided ample reasoned explanation for its choice to create these

standards. In the SNPRM, the Commission noted that a carrier

> would be required to consider in good faith a shipper's effort at negotiation.
> Consideration in good faith includes, among other things, quotes that are
> within reasonable market rates. (Citation omitted.) If in response to a
> shipper's request for vessel space accommodations the carrier quotes rates
> far above market (or insists on other terms, such as unrealistic quantity
> demands), it will likely be regarded under the SNPRM as an unreasonable
> refusal to deal or negotiate under 46 U.S.C. 41104(a)(10).

88 Fed. Reg. at 38804 (JA51). In addition, in responding to concerns that the

"quoting of rates" element of section 542.1(h)(1) is vague, the agency noted in the

preamble that while it "declines to set a bright line to determine how far above the

market rate is unreasonable, [s]ome leeway in prices offered during negotiations is

permissible and even encouraged by the market itself." 89 Fed. Reg. at 59662

(JA96). The Commission also referred to its earlier discussion of the definition of

"unreasonable," where it had emphasized that the reasonableness determination

was inherently a case-by-case one, but that the comprehensiveness of the overall

rulemaking process should reduce vagueness concerns. *See id*. at 59655 (JA89).

With regard to "pricing strategies," the Commission explained in its discussion of

the export policy requirement that these were among the "practices and procedures" described in the definition of documented export policy, terms that "have their normal and ordinary meaning" and simply describe an ocean carrier's "usual way of doing business." *Id*. at 59652 (JA86); *see* 46 C.F.R. § 542.1(b). No more explanation — especially for the Council's sophisticated carrier members — was necessary.

Under the deferential standard of review, courts must uphold decisions that are "reasonable and reasonably explained." *NextEra Energy*, 118 F.4th at 368 (cleaned up). The price-related elements of the Rule met that standard.

### 3. The Commission Permissibly Required Carriers to Document Their Export Policies and to List Compliance with Such Policies as a Potential Factor in Determining Reasonableness

#### a. The Commission Had Statutory Authority to Issue the Rule's Export Policy Provisions

The Rule requires an ocean carrier to file annually a "documented export policy that enables the timely and efficient movement of export cargo." 46 C.F.R. § 542.1(j). The policy must include, among other things, "pricing strategies, services offered, strategies for equipment provision, and descriptions of markets served." In addition, as noted above, compliance with a carrier's export policy is one of the listed considerations in evaluating whether a refusal to deal is unreasonable under the Rule. *See* 46 C.F.R. § 542.1(d)(1), (g)(1).

The Shipping Act clearly grants the Commission the authority to include these provisions. Title 46 U.S.C. § 40104(a) authorizes the Commission to require that an ocean carrier submit such basic business information, providing that the agency may require a carrier to "file with the Commission a periodical or special report, an account, record, rate, or charge, or a memorandum of facts and circumstances related to the business of the common carrier…" This language could hardly be broader or more comprehensive, and it specifically includes periodic reports like the export policies at issue here.

The Council claims (Br. at 34–36) that section 40104 does not grant the agency authority to require the filing of "prospective" information, and it argues that all the categories of information that are required to be included in the export policies are "inherently prospective." But that is mistaken. First, the requirement only seeks information about a carrier's current policy and plans, based on information available at the time of filing, so in that sense it is not inherently prospective. Second, and in any event, the Commission may rightly inquire about future plans because there is *no temporal limitation* in section 40104(a), which authorizes the Commission to require that carriers file reports, memoranda, and other information "related to the business of the common carrier." And relation to common carrier business can pertain to matters past, present, and future.

The Council also claims (Br. at 34–35) that the term "report" in section 40104(a) cannot be read to encompass prospective information, but that is wrong. In fact, annual reports in the business community commonly feature the type of plans and strategies at issue here — including the annual reports of Council members, such as ocean shipping giant Maersk. *See* Maersk, Annual Report 2024, at 14–25, available at https://investor.maersk.com/static-files/31bf05a1-6f0c-4fbd-a3c7-3f58e044f668 (including sections on "Market Environment," which in part addressed "The outlook for 2025"; "Strategy"; and "Risk Management," which detailed "Key risks to the 2025-2029 business plan") (visited Mar. 24, 2025); Corporate Finance Institute, Annual Report, available at https://corporatefinanceinstitute.com/resources/accounting/annual-report/ (visited Mar. 18, 2025) ("Annual reports typically include information regarding [a company's] future performance in order to provide shareholders with information on the company's future goals and objectives. ... The reports also include information regarding a company's strategy and how it plans to implement that strategy in the coming years.").

The Council's authority does not support its argument. It cites (Br. at 34) parts of a 1981 statement by former FMC Chairman Alan Green at a Senate subcommittee hearing about bills preceding those that later became the Shipping Act of 1984. But that general statement — urging the subcommittee to retain

strong report-ordering authority for the FMC — includes nothing that would limit the agency's ability to gather prospective information today under the authority of the current section 40104(a). In fact, as part of that same statement, Chairman Green provided a list of 20 reporting orders the FMC had issued over the preceding five years, including a September 1980 "Request for information concerning the *pricing policy of North Atlantic carriers for U.S exporters*" — an order encompassing prospective export-related information that is comparable to the information at issue here. Hearing Before Subcommittee on Merchant Marine of the Committee on Commerce, Science, and Transportation on S. 1593 and S. 125, U.S. Senate, 97th Cong., 1st Sess. (Sept. 21, 1981) at 147–49 (emphasis added). Similarly, the dictionary definition of "report" that the Council cites (Br. at 34) also undercuts its argument, by including the phrase "often with a recommendation for action," indicating that the term can encompass material about future plans and activity.

Given the breadth of the term "report" and the authorizing provision in which it appears, 46 U.S.C. § 40104(a), as well as OSRA 2022's empowerment of the FMC to "fill up the details of [the] statutory scheme" to protect U.S. exports, *Loper Bright*, 603 U.S. at 395, the agency clearly has the authority to require reasonable reporting about carriers' export-related plans.

### b.    The Commission Reasonably Explained the Rule's Export Policy Provisions

The Council also asserts (Br. at 36–41) that the Commission has not adequately explained the export policy provisions, a claim that it seems to base on the requirement in 46 U.S.C. § 40104(a)(3) that the agency must "limit the scope of any filing ordered under this section to fulfill the objective of the order," as well as on the APA's general requirement that agency action not be arbitrary and capricious. But the Council's claim is unavailing.

As the Commission explained when issuing the Rule, the export-policy filing requirement in 46 C.F.R. § 542.1(j) will help the agency monitor the shipping industry for reasonable conduct regarding U.S. exports. *See* 89 Fed. Reg. at 59663–64, 59669–71 (JA97–98, JA103–05). In particular, as the Council notes (Br. at 37), the Commission stated that the information will help it "determine whether an ocean common carrier's conduct in a specific matter aligns with their general policies and whether the ocean common carrier thus acted reasonably" under section 41104(a)(10). If a carrier lacks a reasonable export policy, or if it has one but has not followed it, that could be pertinent evidence in evaluating a shipper's complaint of unreasonableness. Indeed, that purpose is clear from the text of the Rule's export policy requirement itself, including through its emphasis on different circumstances that may affect whether cargo space is made available to a shipper. 89 Fed. Reg. 59663–64 (JA97–98); 46 C.F.R. § 542.1(j). In a broader

28

sense, the Commission explained, obtaining the information will help the agency "meet two key purposes of the Shipping Act: (1) 'ensur[ing] an efficient, competitive, and economical transportation system in the ocean commerce of the United States' (46 U.S.C. 40101(2)); and (2) 'promot[ing] the *growth and development of United States exports* through a competitive and efficient system for the carriage of goods by water in the foreign commerce of the United States, and by placing greater reliance on the marketplace' (46 U.S.C. 40101(4))." 89 Fed. Reg. at 59670–71 (JA104–05) (emphasis added).

In addition, the annual reporting requirement in section 542.1(j) directly serves Congress's well-documented purpose in enacting OSRA 2022 to protect U.S. exports. *See* 168 Cong. Rec. H5464 (statement of Rep. DeFazio) (expressing concern about ocean carriers failing to accommodate U.S. export cargo bookings); H5466 (statement of Rep. Garamendi) (same); 168 Cong. Rec. S1843 (statement of Sen. Thune) (expressing concern about refusals to "carry certain cargo, like agricultural commodities..."); S. Hearing 117–437 at 8 (statement of Sen. Klobuchar) (the new refusal-to-deal rule will address carriers "unreasonably declining shipping opportunities for U.S. exports").

The Council also claims (Br. at 37–39) that the Commission has not adequately explained what it wants in the export policies. Section 542.1 and the relevant preamble explanation provide detailed guidance to implement the general

29

statutory standards, but an agency is not required to define every term it uses; agency rules need only be "reasonably explained," not exhaustively explained. *NextEra Energy*, 118 F.4th at 368 (cleaned up). In addition, the concise statement of what should go in the policies is a regulatory virtue. Section 542.1(j)'s short list of subjects and the FMC's straightforward filing guidance, *see* 90 Fed. Reg. 30 (Jan. 2, 2025) (JA111), can hardly be described as presenting serious burdens on Council members, who are the largest ocean carriers in the world, with extensive export activities. Thus, the Council's claim that its carrier members have had to "guess" (Br. at 38) what terms like "pricing strategies" and "services offered" mean is not credible. Those members appear to have had no difficulty in filing export policies that averaged about 5.4 pages in length by March 2025.

It is also important to note that the creation of export-oriented plans is not an endeavor that is unique to the Commission's refusal-to-deal rule. For example, the U.S. Department of Commerce's International Trade Administration offers businesses a "Sample Export Plan." *See* Sample Export Plan, International Trade Administration, available at [Sample Export Plan](#) (visited Mar. 18, 2025). Of course that plan is an optional tool to assist businesses, rather than a regulatory requirement. But like the FMC's export policy requirement, it envisions that companies will develop goals and strategies for the international marketplace, including identifying markets, pricing, and distribution methods. *See id.*

30

The Council notes (Br. at 39–40) that the export business is volatile, but nothing in the Rule prevents carriers from submitting export policies that reflect that market reality, and the Council provides no reason to think the agency will be inflexible in its application. After all, even if the Commission were to determine that a carrier has not "followed" its filed export policy in engaging in conduct at issue in a later adjudication, that is still just one "non-binding consideration" in the overall reasonableness determination. *See* 46 C.F.R. § 542.1(c)–(h).

In the end, the provisions at issue simply form one component of the Commission's effort to define refusals to deal in accord with Congress's instructions, with a focus on enhancing protections for U.S. exports. They are permissible under the APA's deferential standard of review.

### 4. The Commission's Rule Reasonably Provides for Consideration of "Business Decisions"

The Rule makes clear that "business decisions" may be considered in determining reasonableness under the Rule's "other relevant factors" provisions, even though the Commission decided not to expressly list that factor. 46 C.F.R. § 542.1(d)(4), (g)(4); *see* 87 Fed Reg. 57674, 57676–77 (Sept. 21, 2022) (JA12, JA14–15); 88 Fed. Reg. at 38804 (JA51); 89 Fed. Reg. at 59656–57 (JA90–91). The Council argues (Br. at 41–48) that this approach was arbitrary and capricious. But under deferential APA review, it was plainly within the agency's policy-making discretion not to specifically list that one factor in an entirely new rule,

31

where Congress imposed no specific content requirements, and the agency reasonably explained its decision.

The Council greatly overstates the extent to which the Commission has altered the regulatory landscape by choosing not to explicitly list a "business decisions" factor. The status quo at the time the Rule was issued was *no rule at all*, with no express list of factors that the agency would consider. Adjudication determinations were made based on the general statutory language of 46 U.S.C. § 41104(a)(3), (a)(10) and applicable case precedent, all of which remains relevant.

Moreover, the Commission made it very clear that "business decisions" can still be considered in this analysis, just as was the case before the Rule came into effect. The Rule's text explicitly states that the agency may consider "[a]ny other relevant factors or conduct," and the Rule's preamble specifically confirmed that business decisions were among those other factors. 46 C.F.R. § 542.1(d)(4), (g)(4); 89 Fed. Reg. at 59657 (JA91). The Commission explained that the Rule

> explicitly allows the Commission to consider *any* relevant factor in determining whether a refusal to deal or negotiate was unreasonable. This includes nontransportation factors, such as business decisions (which includes profit considerations). The Commission has made clear information on business decisions relevant to establishing a reasonable refusal to deal would still be relevant to the Commission's analysis.

89 Fed. Reg. at 59657 (JA91) (citations omitted); *see id*. at 59655 (JA89) ("profit and business factors" can be considered alongside other factors). Thus, the Council's contention (Br. at 41) that the Commission arbitrarily "chose to remove

'business decisions' from the explicit 'non-binding' factors that it would consider when analyzing reasonableness" seems to indicate that the Council has succumbed to "the tyranny of labels." *Snyder v. Massachusetts*, 291 U.S. 97, 114 (1934).

In providing a number of potential factors and examples, the Rule does not attempt to determine in the abstract the weight of any factor, but reasonably leaves that task to case-by-case adjudication. The Council has pointed to no adjudication in which it believes "business decisions" were given too little weight under the new Rule, but if a carrier comes to hold that view in a later case, it may seek judicial review then.

For now, the Council provides no persuasive support for the claim that the Commission was *required* to expressly list any particular factor in this Rule where, as here, Congress left the specifics of the Rule to the Commission. Section 7(d) of OSRA 2022 included no requirements as to the specific content of that rule. *See* Pub. L. 117–146, 136 Stat. at 1276; 89 Fed. Reg. 59648 (JA82). So the Commission was not required to include any particular considerations for determining what is "unreasonable." *See Loper Bright*, 603 U.S. at 395 (Congress may permit an agency to "fill up the details of [the] statutory scheme" and "to regulate subject to the limits imposed by a term or phrase that leaves agencies with flexibility, such as [] 'reasonable.'"); *Nat'l Ass'n of Mfgrs. v. SEC*, 800 F.3d 518, 550–51 (D.C. Cir. 2015) (panel opinion attached to rehearing opinion) (where

33

Congress does not mandate any particular result on a regulatory question, the scope of the relevant rule is presumably left to agency discretion). The Commission also declined to expressly list some factors sought by shippers. *See*, *e.g.*, *id*. at 59658 (JA92) (declining requests by Retail Industry Leaders Association and International Dairy Foods Association to include cargo perishability as a listed consideration).

The Council describes past FMC adjudications (Br. at 43–44) in which the agency found "reasonable" "business" decisions to be a factor in the relevant analysis, but it exaggerates the role of that factor in those cases. In the most recent case, *Maher Terminals, LLC v. Port Authority of New York and New Jersey*, FMC No. 12-02, 2015 WL 435475, at *21 (ALJ 2015), an administrative law judge at the FMC stated that "a port *may* defer to a port's reasonable, discretionary business decisions regarding negotiations" (emphasis added). But the ALJ made clear that the central feature of the refusal-to-deal analysis was "reasonableness," not "commercial reasonableness" or "business decisions." *Id*. The ALJ also noted that while a refusal would not be unreasonable where it was "justified by particular circumstances in effect," a refusal to even consider a proposal had been determined to be unreasonable. *Id*. In short, these cases show that the inquiry has always been a more flexible one based on all the circumstances, consistent with the multi-factor approach in the new rule at 46 C.F.R. § 542.1.

In any event, agencies can modify their regulatory approaches as long as they display awareness they are doing so, *Sinclair Wyoming Refining Co. LLC v. EPA*, 114 F.4th 693, 711 (D.C. Cir. 2024), and contrary to the Council's claims (Br. at 43–44, 46), the FMC's awareness of this issue was certainly evident in the preamble's detailed responses to comments on the subject. *See* 89 Fed. Reg. at 59656–57 (JA90–91). Moreover, even if the Council was correct (Br. at 45–46) that business factors would be a less important part of the analysis going forward, that would be consistent with Congressional intent to enhance protection for shippers in this context. *See* 168 Cong. Rec. S1843 (statement of Sen. Thune) (OSRA 2022's grant of "*increased* authority" for the FMC to address unfair carrier practices includes those that "involve[] a refusal to carry certain cargo") (emphasis added); S. Hearing 117–437 at 8 (statement of Sen. Klobuchar) (the new FMC refusal-to-deal rule will "mak[e] it *harder* for [carriers] to unfairly leave our products behind...") (emphasis added).

The Council focuses (Br. at 42, 44, 46) on statements in the Commission's interim rulemaking materials that acknowledge the role of business decisions as a potential factor in the proper analysis, but these statements simply reflect the agency's careful consideration of the issues, and they are consistent with the course it ultimately chose. *See* 87 Fed. Reg. at 57676, 57677 (JA14, JA15); *see id*. at

57677 n.29 (JA15). The Commission emphasized that "reasonableness" assessed on a "case-by-case basis" would continue to be the standard. *Id*. at 57676 (JA14).

In addition, the Council repeatedly points (Br. at 22, 42, 46, 48–49) to the Commission's observation in the SNPRM that it had "decided with the help of the public comments that there is the potential for business decisions to overwhelm the rest of the factors," 88 Fed. Reg. at 38804 (JA51); the Council claims that this shows that the factor is too important to be omitted from the text. But in context, the SNPRM statement the Council cites was more of an interim comment about an apparent potential for the factor to be given too much weight, rather than a definitive statement about its importance in the reasonableness analysis.

Of course, it may be that what the Council ultimately seeks *is* to have "business decisions [] overwhelm the rest of the factors." Toward the end of its discussion, the Council seems to argue (Br. at 46–48) that the Commission was required to include business decisions not just as a permissive factor but as a *mandatory* one, since, according to the Council, the refusal-to-deal rule is arbitrary and "standardless" if the agency has the "discretion to consider or ignore any factor." But once again, the Council cites no case stating that an agency must explicitly list *any* particular factor, much less a mandatory one, in a rule like this. The Council does rely on a recent FMC case, *Evergreen Shipping Agency (Am.) Corp. v. FMC*, 106 F.4th 1113 (D.C. Cir. 2024), but the case actually supports the

respondents' position here. *Evergreen* found the FMC's application of a different rule in a small-claims adjudication to be arbitrary and capricious, but it faulted the agency for focusing *too much on one mandatory factor* (the incentive principle) and too little on other permissive factors in that rule's "reasonableness" analysis, *id*. at 1117 — a flawed approach that it appears the Council is advocating in this case. In contrast here, the Commission crafted a refusal-to-deal Rule that is holistic and flexible, but that still provides a wealth of specific guidance.

It appears that the Council's emphasis (Br. at 41) on "business decisions" is a kind of code for always seeking to charge the highest rate, as the Commission recognized. *See* 89 Fed. Reg. at 59655 (JA89). But the Commission is charged with evaluating whether common carriers like the Council's members have engaged in reasonable practices in specific factual circumstances, and that regulatory effort involves more than profit considerations.

\*      \*      \*      \*      \*

37

## CONCLUSION

Because the World Shipping Council has failed to show that the

Commission's regulation was impermissible, its petition should be denied.

Respectfully submitted,

/s/ *Harry J. Summers*

| | |
|---|---|
| ABIGAIL A. SLATER | PHILLIP "CHRIS" HUGHEY |
| *Assistant Attorney General* | *General Counsel* |
| ROBERT B. NICHOLSON | HARRY J. SUMMERS |
| ROBERT J. WIGGERS | *Attorney-Advisor* |
| *Attorneys* | FEDERAL MARITIME |
| U.S. DEPARTMENT OF JUSTICE | COMMISSION |
| 950 PENNSYLVANIA AVENUE, N.W. | 800 N. CAPITOL ST., N.W. |
| WASHINGTON, D.C. 20530-0001 | WASHINGTON, D.C. 20573 |
| PHONE: (202) 514-2460 | PHONE: (202) 523-5740 |
| robert.nicholson@usdoj.gov | phughey@fmc.gov |
| robert.wiggers@usdoj.gov | hsummers@fmc.gov |

May 13, 2025

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the type-volume limitation and type-style requirements of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32(e)(2)(B), because it contains 8,598 words, excluding the parts of the brief that are excluded by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1). The brief also complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6) because it was prepared using Microsoft Word 14-point Times New Roman font.

/s/ *Harry J. Summers*
HARRY J. SUMMERS
*Attorney-Advisor*
FEDERAL MARITIME COMMISSION
800 N. Capitol St., N.W.
WASHINGTON, D.C. 20573
PHONE: (202) 523-5740
hsummers@fmc.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of May, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the U.S. Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system, and I also caused 8 copies to be delivered to the Court. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF System. I also caused 2 copies to be mailed to:

Robert K. Magovern
Matthew Howell
Rachel Schwartz
Cozen O'Connor
2001 M. Street NW
Washington, DC 20036
*Counsel for Petitioner World Shipping Council*

/s/ *Harry J. Summers*
HARRY J. SUMMERS
*Attorney-Advisor*
FEDERAL MARITIME COMMISSION
800 N. Capitol St., N.W.
WASHINGTON, D.C. 20573
PHONE: (202) 523-5740
hsummers@fmc.gov